(No. 20127.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* LEONARD FITZGIBBONS, Plaintiff in Error.

*Opinion filed February 18, 1931.*

KAI HAMMER, and CHARLES V. FALKENBERG, for plaintiff in error.

OSCAR E. CARLSTROM, Attorney General, JOHN A. SWANSON, State's Attorney, and GEORGE P. O'BRIEN, (EDWARD E. WILSON, and JOHN HOLMAN, of counsel,) for the People.

Mr. JUSTICE HEARD delivered the opinion of the court:

Plaintiff in error, Leonard Fitzgibbons, was in the criminal court of Cook county convicted of the crime of rape upon the person of Annabelle Whitney, a female of the age of fifteen years, and was sentenced to the penitentiary at Joliet for the term of one year.

Annabelle Whitney, a sister-in-law of plaintiff in error, came from Branch, Michigan, to live with plaintiff in error and his wife on April 23, 1929. She testified to acts of sexual intercourse at their home with plaintiff in error, the first of which was in the first week in May, 1929. A female physician testified for the State to having on July 23, 1929, made a physical examination of Annabelle Whitney, who was then pregnant with child. This testimony of the physician cannot be considered as tending to incriminate plaintiff in error, as the witness gave it as her opinion that the coition resulting in pregnancy occurred prior to the time when the complaining witness came to Chicago. Plaintiff in error denied guilt and he was not in any way impeached. The testimony of the complaining witness was weakened by the fact that about a month prior to the trial, in the judge's chambers, she told the assistant State's attorney "that she had not had anything to do with Leonard Fitzgibbons;" by the fact that she made no complaint to any person until July 23, 1929; (*Cunningham* v. *People*, 210 Ill. 410;) by the fact that on that date she told her guardian, Dr. Davis, "I am in a delicate condition and need the attention of a doctor, and my condition was caused by two boys in Branch, Michigan;" by the fact that her uncle and aunt, with whom she had lived in Branch prior to her coming to Chicago, testified that her general reputation for truth and veracity was bad during the three years she lived with them, and by the fact that on August 7 she sent to her sister a letter containing, among other things, the following:

"I am so sorry that I told a lie on Len in court, he is not the blame, but it made me so mad when he hit you Tuesday

morning, and I think the reason he choked me is because I tried to help you. The to yong fellows up in the country is the fault, they forced Dora and I to the car the Saturday night of the dance when we went out to the toilet, we did not tell Uncle Toney because he would acuse us of leaving them and give us a licken and you know how mean he gets when he is mad. So tell Len to forgive me, and let me come home again I will never tell a lie again, but I did not realize what would happen, I thought they would put him in jail for a month or so, and I thought I could punish him that way for hitting you. But I sure am sorry that I told such a lie, but did not realise what would hapen. I thought we diden't need to go to court or nothing, and I did not think I would be put here where I am at. I wish Dr. would try and put me in that place where he told us he would put me, until it was over with."

While the weight of the evidence is for the jury to determine, and this court will not disturb a verdict of guilty or reverse a judgment of conviction on the ground that the evidence is insufficient to convict unless the verdict is palpably contrary to the weight of the evidence or the evidence is so unreasonable, improbable or unsatisfactory as to justify a reasonable doubt of the defendant's guilt, (*People* v. *McCurrie,* 337 Ill. 290; *People* v. *Meyer,* 331 id. 608;) yet before the liberty of a citizen is declared forfeited to the State we should carefully review the evidence, and where we believe the conviction is based upon unsatisfactory evidence, or where, after a patient consideration of the evidence, there remains such grave and serious doubt of the guilt of the accused as leads to the conclusion that the verdict of the jury is the result of prejudice or passion and not of that calm and deliberate consideration of .the evidence which the law requires, then we should so find. *Keller* v. *People,* 204 Ill. 604; *Dahlberg* v. *People,* 225 id. 485; *People* v. *Bolik,* 241 id. 394.

Ordinarily the accused and the prosecutrix are the only parties who have any actual knowledge of the facts where the crime charged is rape or an attempt to commit rape. The conviction in most cases is brought about by the testimony of the woman alone. Long ago it was said by Lord Hale in regard to the charge of such a crime, "that it is an accusation easily to be made and hard to be proved, and harder to be defended by the party accused, though never so innocent." (1 Hale, 635.) Accordingly, the testimony of the prosecuting witness must be scrutinized with caution, and where evidence is offered substantially impeaching the truth of her statements and the defendant denies the crime her evidence should be corroborated. *People* v. *Glasser,* 335 Ill. 263; *People* v. *Blanch,* 309 id. 426; *Stevens* v. *People,* 158 id. 111.

In view of the direct conflict in the evidence, the unsatisfactory character of the incriminating evidence and its unworthy and discredited source, we are of the opinion that the judgment of the criminal court should be reversed and the cause remanded to that court.

*Reversed and remanded.*

Subsequently, on petition for rehearing, the following additional opinion was filed:

Per CURIAM: A rehearing of this cause was granted and an order thereafter entered giving leave to supply a portion of the bill of exceptions theretofore omitted and to amend the abstract accordingly. This completed record has again been considered, and we adhere to the original conclusion and judgment entered herein.

*Reversed and remanded.*