(No. 32248.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* ROBERT O'CONNOR, Plaintiff in Error.

*Opinion filed May 22, 1952.*

THADDEUS C. TOUDOR, of Chicago, for plaintiff in error.

IVAN A. ELLIOTT, Attorney General, of Springfield, and JOHN S. BOYLE, State's Attorney, of Chicago, (JOHN T. GALLAGHER, RUDOLPH L. JANEGA, ARTHUR F. MANNING, and WILLIAM J. McGAH, JR., all of Chicago, of counsel,) for the People.

Mr. JUSTICE CRAMPTON delivered the opinion of the court:

After a trial by jury in the criminal court of Cook County the defendant, Robert O'Connor, was found guilty of rape and of the infamous crime against nature committed upon the prosecuting witness. He was sentenced to the penitentiary on the charge of rape for a term of three years and for the crime against nature for a period

of not less than one nor more than three years, the sentences to run concurrently. He brings the case here for review by writ of error.

Several grounds for reversal are urged, but it will be necessary to consider only the contention that the evidence is insufficient to support the conviction. The record discloses that the prosecutrix was an unemployed young woman twenty-three years of age. She had recently been married, but had separated from her husband only a few months thereafter. She testified that on the afternoon of June 9, 1949, she accompanied two men, not including defendant, on an automobile ride from Chicago to a place known as Dam No. 2, a forest preserve near Des Plaines, where they remained for several hours. On their return to Chicago, at about 8:30 P.M., they parked the automobile in an alley and one of the men left it, returning in a few minutes with the defendant. They were later joined by three other men, and complaining witness went with all of the men to a tavern where they drank beer for more than an hour. About midnight the complaining witness, together with defendant and three other men, again entered the automobile, rode around the city for some length of time, and then drove to the forest preserve at Des Plaines. Upon arriving there, they left the automobile and sat at one of the tables of the grove. Shortly thereafter the men put her on the table, held her down by force, and each in turn had sexual intercourse with her against her will. In addition one Bartoli, and subsequently, the defendant, each forcibly compelled her to submit to the crime against nature charged in the indictment, the revolting details of which need not be related here.

Complaining witness testified further that they returned to Chicago and went to a tavern, where they resumed drinking. While there the complaining witness went to the ladies' room alone. Thereafter she visited other taverns

in the company of defendant, Bartoli and another of the men. When their funds were exhausted, she told them she would get them some money if they would let her go, and she made a telephone call in an attempt to do so. The men refused to let her leave them, but told her that if she knew where she could get some money they would take her there and go in with her. With this purpose, they left the tavern to drive to a restaurant mentioned by complaining witness. On the way the car was stopped for a traffic light and she attempted to get out, whereupon defendant pulled her back, kicked and beat her, and ordered her to remain quiet. It was then about seven o'clock the following morning. When they arrived at the restaurant, complaining witness induced them to let her enter alone to get the money. Before she left the car, one of the men opened the glove compartment, showed her a pistol and warned her that if she tried anything they would "take care of" her. Complaining witness then entered the restaurant, was unable to obtain the money, came back outside, and made her escape through a drugstore. She took a taxicab to her home where, after having a bath, she went to bed and remained there for about three days. She then consulted her physician, who made an examination and administered medicine.

On June 21, 1949, eleven days after the date of the alleged offenses, complaining witness came out of a tavern about 9:30 P.M. and started walking along the sidewalk. She looked behind her and observed a car, which resembled the one in which she had ridden on June 9, with three or four men in it. She testified she thought they were the same men looking for her. She thereupon entered an automobile, which had stopped for a stop sign at the intersection, and requested the driver to take her away from there. The man driving the car was unknown to her. He drove about three or four blocks and left her out at a drugstore, where she was found by police officers and taken

to their car for questioning. She then related to them the occurrences which led to the indictment in the present case.

No person other than the prosecuting witness was produced to testify concerning the commission of the acts in question. The police officers who questioned her when she left the drugstore testified that they were the occupants of the car behind the one which prosecutrix entered after leaving the tavern on June 21; that they followed the latter to the drugstore which prosecuting witness entered; that they took her in their car to the parking lot adjoining the police building, where they questioned her, and then proceeded to a tavern in which they found defendant and Bartoli. The officers further testified that they took the two men to a subway station to talk to them; that defendant then attempted to escape by running away, but was recaptured after one of the officers fired two shots in the air; that the prosecuting witness identified defendant and Bartoli as two of the men who had taken her to the forest preserve at Des Plaines on the early morning of June 10, and neither of them said anything when they were so identified; that defendant later admitted he had attempted to put her into prostitution; and that on two subsequent occasions he denied knowing the girl.

At the trial defendant denied having accompanied the prosecutrix to the forest preserve at the time in question. He also denied having made the statements testified to by the police officers. He testified that the only time he had anything to do with the prosecutrix was on June 11, 1949, when he met her in a tavern and took her to a hotel. He further testified that he had sexual relations with her on this occasion.

Defendant insists the evidence is not of the clear and convincing character required where a conviction for this type of offense depends upon the uncorroborated testimony of the prosecuting witness. After a careful examination of the record we think the contention must be sustained;

It is well settled that where the conviction depends upon the testimony of the prosecutrix and the defendant denies the charge, her testimony, unless it appears clear and convincing, must be corroborated by some other fact or circumstance in evidence. (*People* v. *Scott,* 407 Ill. 301.) We find no such corroborating evidence in this record. It is clear that the testimony of the police officers, concerning defendant's attempt to run away from them and his statement of intention to put prosecutrix into prostitution, cannot satisfy the requirements of the rule under the circumstances of this case. The question, therefore, is whether the testimony of the prosecuting witness is sufficiently clear and convincing to justify the finding of guilt beyond a reasonable doubt.

An examination of her evidence reveals improbabilities and inconsistencies which tend to make incredible the claim that she was forcibly raped by defendant and compelled to submit to the outrages described. Immediately after the offenses were committed, according to her testimony, she returned with the men to taverns where many other people were present, and where, as she testified on cross-examination, she then drank some beer. She went alone to the ladies room, and also used the telephone. She accompanied the men in an automobile through the streets of Chicago, and entered a restaurant alone while the same men, who had allegedly raped her, beat her and forced her to submit to the disgusting acts described, were waiting outside in the car. Yet at no time did she scream, make an outcry, or appeal to anyone for help, nor did she make any complaint that she had been raped. It is incredible that one who had been subjected to the terrifying experience she described would not attempt to attract the attention of persons in the taverns or on the street, despite the orders, or the somewhat ambiguous threats, of her attackers. Her failure to call for help or to otherwise take advantage of the opportunities for assistance and escape is inconsistent

with the conduct of a woman who had just been outraged, and makes her entire testimony unconvincing. See *People v. Scott,* 407 Ill. 301.

Not only did she remain in the company of her attackers for more than five hours on the date of the offense, without any outcry or attempt to attract the attention of others, but she failed to make complaint to the authorities or anyone else until eleven days later and then did so only after she was approached by police officers for questioning on other matters. Although she testified she was examined by her physician, the latter did not testify at the trial. Under such circumstances, where defendant denies the charge and there is no evidence corroborating the testimony of complaining witness, the improbabilities and inconsistencies referred to create a doubt which must be resolved in defendant's favor. (See *People v. Watkins,* 405 Ill. 454; *People v. Grudecki,* 373 Ill. 536.) We think that in this case the interests of justice would best be served by granting defendant a new trial.

The judgment of the criminal court of Cook County is reversed, and the cause is remanded for a new trial.

*Reversed and remanded.*